UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| FRANK D. KINCAID, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-152-DCP |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 18 & 19] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Frank D. Kincaid, Jr. ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

**I.      PROCEDURAL HISTORY**

On February 11, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on September 30, 2011. [Tr. 15, 194–201]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 143]. A hearing was held on May 20, 2016. [Tr. 30–63]. On August 1, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 15–25]. The Appeals Council denied Plaintiff's request for review on March 6, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 16, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since September 30, 2011, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: history of left testicular removal; prostatectomy, with adenocarcinoma; affective disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can only frequently climb ladders, ropes,

scaffolds, ramps or stairs; balance; stoop; kneel; crouch and crawl. Work is limited to simple, routine and repetitive tasks; performed in a work environment free of fast paced work; involving only simple work-related decisions; and with only occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 21, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–25].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ erred by failing to consider Plaintiff's testicular pain and need to urinate frequently as nonexertional impairments. [Doc. 19 at 9–12]. Next, Plaintiff alleges that the ALJ failed to properly evaluate his symptoms and drew improper inferences regarding the length of time between his medical treatment. [*Id.* at 13–15]. Lastly, Plaintiff contends that the ALJ was not properly authorized to hear and decide the case under the Appointments Clause. [*Id.* at 15–16]. The Court will address Plaintiff's specific allegations of error in turn.

### A. Plaintiff's Testicular Pain and Frequent Urination

Plaintiff asserts that the ALJ improperly failed to include a limitation on Plaintiff's need to urinate frequently in the RFC determination. Plaintiff points to his testimony and frequent urination at the disability hearing [*Id.* at 11 (citing [Tr. 39, 56)], as well the medical record detailing the removal of his left testicle, right testicle pain, and prostate cancer treatment. Plaintiff alleges that the ALJ focused only on the discussion of incontinence by his treating physician, Wesley M. White, M.D., and ignored Dr. White's observation that Plaintiff had "continued complaints of left pelvic pain." [Doc. 19 at 12]. Further, Plaintiff contends that "[t]he administrative record clearly establishes that [he] has testicular pain and frequent urination both daytime and nighttime." [*Id.*]. Additionally, Plaintiff claims that the ALJ failed to identify the activities of daily living that supported his conclusion that Plaintiff could perform a modified range of medium work. [*Id.* at 11]. Ultimately, Plaintiff maintains that the ALJ's failure to properly evaluate his need to urinate frequently was not harmless error because the vocational expert ("VE") responded that a

hypothetical individual with an RFC including having to take six additional breaks per day of ten minutes or more would be unable to perform any jobs. [*Id.* at 12–13 (citing Tr. 59)].

The Commissioner responds that the medical record does not support a disabling limitation regarding Plaintiff's need to urinate frequently. [Doc. 23 at 10]. Additionally, the Commissioner asserts that there is no objective evidence that supports Plaintiffs allegations of disabling testicular pain. [*Id.* at 11]. The Commissioner maintains that the ALJ properly considered Plaintiffs' complaints of disabling pain and his testimony regarding urinary frequency, and that the RFC is supported by substantial evidence.

A claimant's residual functional capacity describes the most a claimant can do considering the effects of all his impairments on his ability to perform work-related activities. 20 C.F.R. § 404.1545. The ALJ is tasked with the sole responsibility of assessing a claimant's RFC, 20 C.F.R. § 404.1546(c), based on "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, Plaintiff retains the burden of proving that he is disabled under the applicable regulations. 20 C.F.R. § 404.1512(a); *see also Ferguson v. Comm'r of Soc. Sec.*, 682 F.3d 269, 275 (6th Cir. 2010).

In the disability decision, the ALJ found Plaintiff's history of left testicular removal and prostatectomy, with adenocarcinoma, as severe impairments. [Tr. 17]. The ALJ reviewed Plaintiff's testimony at the disability hearing of continued pain subsequent to the removal of his testicle, as well as pain in his pelvic area after surgical removal of cancer in his prostate. [Tr. 20]. Specifically, the ALJ noted Plaintiff testified having to go to the bathroom every fifteen to twenty minutes. [*Id.*]. However, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with" the record. [*Id.*].

The ALJ reviewed that in a March 2, 2012 consultative examination with Jeffrey Summers, M.D., Plaintiff reported problems from surgery on his left testicle, but no other abnormal findings. [Tr. 21 (citing Tr. 319)]. Additionally, the ALJ detailed Plaintiff's complaints of right testicular pain at Fort Sanders Regional Medical Center on July 23, 2012, but that "[a]n ultrasound revealed testicular microlithiasis, epididymal cyst and minimal right hydrocele, but no evidence of testicular mass." [Tr. 21]. Therefore, the ALJ noted that "in the year after [Plaintiff] alleges that he could no longer work, the evidence suggests that [Plaintiff] sought medical treatment only *once*." [*Id.*].

The ALJ also reviewed Plaintiff's treatment at Cherokee Health Systems on December 2, 2013 and January 9, 2014 for treatment of his right testicle pain. [*Id.*]. On December 2, 2013, Plaintiff reported constant pain in his groin when standing, as well as chronic urinary frequency. [Tr. 329–30]. On a follow-up appointment on January 9, 2014, Plaintiff reported increased swelling and constant pain, as well as "increased frequency," including getting up eight times a night to urinate. [Tr. 325].

Additionally, the ALJ discussed Plaintiff's treatment with Dr. White, his treating physician at University Urology, beginning on March 4, 2014. [*Id.*]; *see* [Tr. 480]. Plaintiff was initially referred to Dr. White on March 4, 2014 for treatment of his testicular pain and urinary frequency, including Plaintiff noting that his urinary frequency and nocturia had "increased in [the] last 6 months." [*Id.*]. A prostate biopsy was performed in August of 2014, but Plaintiff did not return to see Dr. White for over a year, in part due to being incarcerated. [Tr. 21]; *see* [Tr. 470]. After prostate cancer was diagnosed, Dr. White performed a robotic-assisted radical prostatectomy with bilateral pelvic lymph node dissection. [Tr. 21]; *see* [Tr. 431]. The ALJ noted that a December 9,

2015 follow-up cystogram "revealed extravasation at the bladder neck, indicating leakage presumably from [the] recent prostatectomy." [Tr. 21].

The ALJ further reviewed Plaintiff's treatment with Dr. White following the prostatectomy, including that on January 6, 2016, Plaintiff reported that he was "doing well . . . healing fine . . . [and] urinating fine" after his surgery. [Tr. 456]. However, the ALJ noted that on February 29, 2016, Dr. White's treatment notes reflect that Plaintiff stated that he was in constant pain, and "voiding every '15 mins with a full rush.'" [Tr. 452]; *see* [Tr. 22]. After an antibiotic was prescribed, the ALJ discussed that on April 11, 2016, Dr. White noted "no urinary issues, with a good flow of stream and incontinence resolved." [*Id.*].

The ALJ observed that Plaintiff was seen by Steven Vaughn Dill, M.D., at the University of Tennessee Medical Center, on May 6, 2016 regarding "significant right testicular discomfort, as well as "increased day and nighttime urinary frequency." [*Id.*]. Dr. Dill stated that Plaintiff "has recovered reasonably well following his prostatectomy," including regaining full continence, but that "[h]e does struggle with persistent nocturia and daytime frequency." [Tr. 529]. Therefore, Dr. Dill prescribed Plaintiff Azo "to see if that is of some benefit" for his urinary frequency." [Tr. 530].

Accordingly, the ALJ found that Plaintiff's allegations of disabling symptoms and limitations are not entirely consistent with the evidence in the record, and "the restrictions are supported by the clinical evidence, objective medical imaging, and the claimant's reported activities of daily living." [Tr. 22–23].

During the disability hearing, Plaintiff was required to excuse himself to use the restroom [Tr. 39], and his attorney stated that Plaintiff had to urinate three times in the hour before the disability hearing [Tr. 37]. Plaintiff later testified that he had to use the restroom five times

9

between the time he arrived at around 8:05 a.m. and the beginning of the hearing around 9:00 a.m. [Tr. 55]. After the ALJ asked "going back before the prostatectomy, how often did you have to urinate every day," Plaintiff responded every "15 to 20 minutes." [Tr. 46]. Plaintiff further testified that his urinary symptoms, including incontinence and frequent urination, have not improved since his prostatectomy on December 3, 2015. [Tr. 48].

With respect to Plaintiff's urinary frequency, the Commissioner claims that because Plaintiff failed to list frequent urination in his function report, reported doing well after his surgery with no dysuria, and was treated with over-the-counter medication, his complaints "of urinary frequency . . . do[ ] not appear to be as limiting as he now alleges, particularly in light of his doctor's recommendation that he treat it with AZO." [Doc. 23 at 11].

However, the Court finds that the ALJ's RFC determination is not supported by substantial evidence because he failed to appropriately consider the effect of Plaintiff's frequent urination on his ability to perform work-related activities. Plaintiff's symptom of frequent urination was well-documented in the medical record, both before and after his prostatectomy. For example, the ALJ detailed Plaintiff's diagnoses and complaints of frequent urination on December 2, 2013, January 9, 2014, March 4, 2014, and May 6, 2016 [Tr. 21–22], as well as Plaintiff's testimony at the disability hearing that he was still "bothered by constant urination, having to go to the bathroom every 15-20 minutes" [Tr. 20]. Prior to his surgery, a September 2, 2015 treatment note reflects that Plaintiff complained of urinary frequency of six to eight times during the day. [Tr. 468], as well as a June 25, 2014 treatment note also stating Plaintiff complained of urinary frequency. [Tr. 477]. During a February 29, 2016 appointment at University Urology, Plaintiff's symptoms included "9x" frequency and nocturia, as well as urgency. [Tr. 452].

The Commissioner's arguments appear to correlate Plaintiff's improvement after his

prostatectomy with an improvement in his urinary frequency, although this connection is not reflected in the medical record. The ALJ noted that on January 6, 2016, Plaintiff reported that he was "urinating fine" after his surgery, with "rare leakage." [Tr. 22]; *see* [Tr. 456]. The Court has already detailed that Plaintiff's treatment notes on February 29, 2016 reflect that Plaintiff again stated that he was "voiding every '15 mins with a full rush.'" [Tr. 452]. Although an antibiotic was prescribed, and Plaintiff's April 11, 2016 treatment note states that Plaintiff denied "urinary issues" or "further complaints at this time," as well as that Plaintiff's incontinence was resolved [Tr. 449], Plaintiff again complained of increased day and nighttime urinary frequency in his May 6, 2016 treatment note with Dr. Dill [Tr. 529]. Lastly, Plaintiff testified that his frequent urination has not improved since his prostatectomy at the disability hearing. [Tr. 48].

Therefore, while the medical record reflects that Plaintiff's symptoms of incontinence and leaking may have been resolved after his prostatectomy, the ALJ did not cite to treatment notes or claim that Plaintiff's urinary frequency had improved. *See, e.g.*, *Limbrick v. Colvin*, No. CV 14-9692-PLA, 2015 WL 5554002, at *7 (C.D. Cal. Sept. 21, 2015) ("Moreover, although the ALJ focused on plaintiff's incontinency, finding that it was not a severe impairment, and that the evidence of record supports a finding that any incontinency problems had been resolved, she merely noted in passing the physician's opinion that urinary frequency might be related to an enlarged prostate, and did not specifically address this alleged issue and its potential functional limitation on plaintiff's RFC."). Further, the ALJ failed to consider the effect of Plaintiff's frequent urination on his ability to perform work-related activities or analyze the pertinent medical records related to this symptom when assessing Plaintiff's RFC.

Despite mentioning Plaintiff's testimony, as well as reviewing recurrent complaints of urinary frequency in the medical record, the ALJ failed to consider Plaintiff's frequent urination

11

in the RFC determination. Although the ALJ found that Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of the alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record" [Tr. 20], the ALJ did not address how Plaintiff's testimony concerning his frequent urination was not supported by the medical record. *See, e.g.*, *Cobb v. Astrue*, 613 F. Supp. 2d 253, 258 (D. Conn. 2009) ("However, even assuming the ALJ found Mr. Cobb's claim of increased urination was unsupported by the medical record, her blanket and general statements regarding Mr. Cobb's credibility lack the requisite specificity for Mr. Cobb or any subsequent reviewer to determine the weight the ALJ attributed to Mr. Cobb's claims regarding the frequency of urination, not to mention the basis for the ALJ's assessment of the weight of that claim."). Further, Plaintiff correctly states that although the ALJ based his credibility determination, in part, on Plaintiff's reported daily activities, the ALJ did not detail in the disability decision which reported daily activities were in conflict with Plaintiff's statements. The ALJ's only discussion of the need for breaks in the disability decision was affording little weight to the opinion of the state agency psychological consultant who noted that plaintiff would be able to maintain concentration, persistence and pace for low-level detailed tasks over a normal workday, with appropriate breaks. [Tr. 23].

Lastly, during the disability hearing, the VE testified that when a limitation involving six additional bathroom breaks per day at ten minutes each was added to Plaintiff's RFC, this limitation would eliminate all competitive work. [Tr. 59]. *See, e.g.*, *Limbrick*, 2015 WL 5554002, at *7 ("The Court cannot find this failure harmless, especially in light of the fact that at the hearing, plaintiff's counsel asked the VE whether an individual with plaintiff's RFC who needed to take a five-minute restroom break three times an hour would be able to perform plaintiff's past relevant work, and the VE testified that '[c]onsistently, over time, day after day, that would eliminate

12

competitive employment.'").

Accordingly, the Court finds that substantial evidence does not support the ALJ's RFC determination, as the ALJ failed to appropriately consider Plaintiff's frequent urination in the disability decision. *See, e.g.*, *Ellis v. Colvin*, No. 8:15-CV-05034-RMG-JDA, 2017 WL 436101, at *11 (D.S.C. Jan. 24, 2017) ("Upon review of the ALJ's decision and the evidence of record, particularly Plaintiff's testimony regarding his limitations and his many past work attempts that ended due to his frequent bathroom trips, the Court finds that substantial evidence does not support the ALJ's credibility findings or the RFC determination. The RFC formulation failed to adequately accommodate Plaintiff's severe urinary incontinence impairment; therefore, remand is required for further administrative proceedings."), *report and recommendation adopted sub nom.*, *Ellis v. Berryhill*, 2017 WL 432696 (D.S.C. Jan. 31, 2017). Plaintiff's diagnoses and treatment for frequent urination were well-documented in the medical record both before and after his prostatectomy, and the ALJ failed to discuss the impact of this symptom on Plaintiff's RFC. This error is not harmless, as the VE testified that a limitation involving six additional bathroom breaks a day at ten minutes each would eliminate all competitive work. Therefore, Plaintiff's allegation of error constitutes a basis for remand.

### B. ALJ's Discussion of Frequency of Treatment

Plaintiff asserts that the ALJ improperly "drew negative inferences regarding the length of time between [Plaintiff's] treatment without asking about or considering the reasons for the length of time between the treatments as required by SSR 16-3p." [Doc. 19 at 14]. Plaintiff states that he received Indigent Care coverage [Tr. 325], and "could only see specialists when CHS referred him to a specialist and payment could be arranged." [Doc. 19 at 14]. Plaintiff further claims that the ALJ erred by failing to inquire about "the reasons for gaps in [Plaintiff's] medical treatment"

13

[*Id.* at 15].

The Commissioner responds that while Plaintiff "may be indigent, the record does not suggest that Plaintiff had to forego treatment *because* he is indigent, nor does it suggest that he required greater treatment than he received." [Doc. 23 at 13]. Further, the Commissioner alleges that Social Security Ruling 13-3p states that "the ALJ may ask about why the individual has not sought treatment in a manner consistent with his complaints." [*Id.*]. The Commissioner suggests that the record demonstrates that Plaintiff was incarcerated for several months, as well as sought treatment for other symptoms, during the period at issue. [*Id.* at 12].

In the disability decision, the ALJ noted that "in the year after the year the claimant alleges he could no longer work, the evidence suggests that the claimant sought medical treatment only *once*," as well as noting a "considerable gap in treatment" from March 2012 to December 2013 and that Plaintiff did not return to see Dr. White from August 2014 to September 2015. [Tr. 21].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

Social Security Ruling 16-3p provides that:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

2016 WL 1119029, at *8.

As the Court has already found that Plaintiff's case will be remanded for a reevaluation of Plaintiff's RFC, the ALJ should appropriately consider any reasons for a lack of treatment in his evaluation of Plaintiff's symptoms in accordance with Social Security Ruling 16-3p. These reasons include that an individual "may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *9. However, the Court notes that the ALJ is not required to directly question Plaintiff if the record is clear regarding the reasons for his lack of treatment.

### C. Authority of the ALJ

Plaintiff alleges that at the time the hearing was held, as well as when the decision was issued, the ALJ was not properly appointed under the Appointments Clause. [Doc. 19 at 15–16]. Plaintiff's argument is based upon the Supreme Court's recent decision in *Lucia v. Securities and Exchange Commission*, in which the Supreme Court held that ALJs for the Securities and Exchange Commission ("SEC") are "'Officers of the United States,' a class of government officials distinct from mere employees," who are subject to the requirements of the Appointments

Clause. 138 S. Ct. 2044, 2049 (2018) (quoting U.S. Const. Art. II, § 2, cl. 2). The Commissioner responds that "Plaintiff waived any challenge to the ALJ's authority by failing to raise it at the administrative level." [Doc. 23 at 15].

The Appointments Clause requires "Officers of the United States" to be appointed by either the "President, 'Courts of Law,' or 'Heads of Departments.'" *Id*. In *Lucia*, the Supreme Court held that SEC ALJs qualify as "Officers of the United States" who are subject to the demands of the Appointments Clause. *Id.* at 2055. SSA ALJs (like SEC ALJs prior to *Lucia*), have traditionally not been appointed by the Commissioner (or the President or a Court of Law). While *Lucia* only explicitly addressed ALJs who worked for the SEC, the SSA has not taken the position that its ALJs are exempt from the requirements of the Appointments Clause. Rather, on July 16, 2018, the Commissioner retroactively ratified the appointment of all SSA ALJs to satisfy the requirements of the Appointments Clause. *See* Soc. Sec. Ruling 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019).

In *Lucia*, the Supreme Court stated that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). The Supreme Court noted that the claimant had made "just such a timely challenge," by raising his Appointments Clause objection before the SEC and had reasserted it throughout his appeals. *Id.* "The *Lucia* opinion and its preceding circuit split prompted questions about whether all administrative agencies must appoint ALJs under the Appointments Clause." *Gilbert v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ----, 2019 WL 2281247, at *1 (N.D. Ohio May 29, 2019).

Following the Supreme Court's decision in *Lucia*, "the overwhelming consensus of courts faced with the issue . . . have concluded that a social security claimant's failure to present an

16

Appointments Clause challenge to the ALJ results in a forfeiture of the claim at the judicial level." *Hodges v. Comm'r of Soc. Sec.*, No. 1:18-CV-394, 2019 WL 1330847, at *2 (S.D. Ohio Mar. 25, 2019); *see, e.g.*, *Harris v. Berryhill*, No. 1:18-CV-01114-CGC, 2019 WL 3431750, at *2 (W.D. Tenn. July 30, 2019) ("As set forth above, this Court, the unanimous decisions of district courts within our Circuit, and the overwhelming majority of the courts that have considered this question have held that a 'timely challenge' of an ALJ's authority must occur at the administrative level. Thus, these courts have not permitted remand for a hearing before a constitutionally appointed ALJ or reversals of the case for an award of benefits on the basis of an Appointments Clause violation.").

The vast minority of courts nationwide base their decisions on the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), which noted that Social Security proceedings are non-adversarial in nature and narrowly held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the *Appeals Council* in order to preserve judicial review of those issues." 530 U.S. at 112 (emphasis added). However, the Court finds that "*Sims* left untouched the general rule that a claimant forfeits a claim on appeal that she failed to raise during the administrative process." *Flack v. Comm'r of Soc. Sec.*, No. 2:18-CV-501, 2018 WL 6011147, at *3 (S.D. Ohio Nov. 16, 2018) ("Courts to have considered the issue uniformly have concluded that *Sims* should not be read so broadly as to mean that a claimant need not exhaust issues before the ALJ."), *report and recommendation adopted by*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019); *see also Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (addressing claimant's argument that she could not have raised an issue with the ALJ because the ALJ failed to explain his reasoning for excluding a witness, as "[t]his may be true, but it is immaterial [because] Maloney had to raise the issue to the agency, and had that opportunity during

17

her administrative appeal to the Appeals Council. Her failure to do so constitutes a waiver."). Ultimately, this argument "overextends *Sims*'s limited holding," as "[t]his case is distinguishable because Plaintiff failed to raise his Appointments Clause issue at *any* point during his administrative proceedings, not simply on administrative appeal." *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 779 (E.D. Mich. Mar. 26, 2019); *see, e.g.*, *Monateri v. Comm'r of Soc. Sec.*, No. 1:08-CV-1297, 2009 WL 10679740, at *2 (N.D. Ohio Oct. 19, 2009), *aff'd*, 436 F. App'x 434 (6th Cir. 2011) (acknowledging *Sims* did not address whether a claimant has to exhaust issues before the ALJ).

Similarly, in *Freytag v. Commissioner*, 501 U.S. 868 (1991), the Supreme Court noted that "Appointments Clause Objections to judicial officers" are "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Id.* at 879. The Supreme Court then "conclude[d] that this is one of those rare cases in which [it] should exercise [its] discretion to hear petitioners' challenge to the constitutional authority of the [Tax Court] Special Trial Judge." *Id.* at 879. "Here, Plaintiff makes no argument that the procedural posture or facts of this case render it equivalent to the 'rare' case contemplated in *Freytag*." *Hutchins*, 376 F. Supp. 3d at 778–79. The Court agrees with the approach of courts within the Sixth Circuit that an appeal of the denial of a claimant's social security benefits does not qualify as the "rare case[ ]" under *Freytag*. 501 U.S. at 879.

Lastly, the Court must address the Sixth Circuit's recent holding in *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018), finding that an Appointments Clause challenge before the Federal Mine Safety and Health Review Commission was forfeited but excusing this forfeiture based upon the facts of that case. In *Jones Brothers*, the Sixth Circuit excused this forfeiture because although Plaintiff failed to "press" the Appointments Clause issue, the plaintiff

identified the issue and the existence of a split of authorities to the Mine Commission at the administrative level. *Id.* at 673, 677–78.

In the present case, Plaintiff failed to identify his Appointments Clause challenge at any point in the administrative proceedings before the Social Security Administration, and has not shown good cause for his failure to do so. Plaintiff "failed to raise, much less develop the Appointments Clause issue at the administrative level although the split in authority occurred long before the application for benefits was considered by the Appeals Council." *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018); *see, e.g.*, *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) ("For these reasons, the Court must respectfully disagree with the magistrate judge's suggestion that Social Security claimants, including the plaintiff here, have no obligation to raise and exhaust Appointments Clause challenges at the administrative level before seeking judicial review. Other courts overwhelmingly agree, albeit for somewhat different reasons.").

Accordingly, the Court finds that Plaintiff has not shown good clause for failing to raise the Appointments Clause claim at issue at the administrative level, and thus, he subsequently forfeited his Appointments Clause challenge. *See Davidson v. Comm'r of Soc. Sec.*, No. 2:16-CV-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge.").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 18**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately determine Plaintiff's RFC in accordance with this opinion, including evaluating the effect of Plaintiff's frequent urination on his ability to perform work-related activities.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge